James CRANSTON, Mark A. Braymes and Joseph R. Kenny, doing business as The James Cranston Associates, Plaintiffs-Appellants,

v.

John A. KENNEDY, Defendant-Appellee.

No. 295, Docket 23383.

United States Court of Appeals Second Circuit.

Argued April 13, 1955.

Decided April 29, 1955.

Nathaniel Rothstein, New York City (Friedman & Friedman, New York City, on the brief), for plaintiffs-appellants.

Frank Delaney, New York City, for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and HASTIE, Circuit Judges.

CLARK, Chief Judge.

Plaintiffs, under the name of The James Cranston Associates, are engaged in the business of buying and selling newspapers and radio stations. They sued on an oral brokerage contract allegedly entered into between James Cranston and defendant, John A. Kennedy, at a meeting in Washington, D. C., on December 19, 1948. The defendant and his wife were controlling stockholders of the Charleston Broadcasting Company, which owned radio station WCHS in Charleston, West Virginia. Cranston testified that Kennedy promised to pay a substantial commission if he would furnish him with the name of a buyer for WCHS. Cranston did in fact contact one

Lewis Clark Tierney on December 23, 1948, who expressed an interest in the property on February 17, 1949, and eventually bought it. The defendant denied that he had ever entered into the alleged contract and also claimed termination thereof by two letters dated January 20, 1949, and February 4, 1949. From the form of the jury's answers to special interrogatories (in addition to their general verdict for the defendant) and from their prior colloquy with the judge, it is clear that the jury found that there had been a contract, but that it had been cancelled or terminated on February 4, 1949. In response to a series of direct questions from the jury, Judge Conger ruled that they could not consider a letter of January 25, 1949, from Cranston to Kennedy mentioning Tierney's name as performance. After they were thus instructed the jury returned a verdict for the defendant, and the plaintiffs appeal.

Since the evidence on performance and termination of the brokerage contract was mainly documentary, it may be helpful to summarize briefly the disputed correspondence before we discuss the inferences to be drawn therefrom. On December 23, 1948, after the Washington meeting had taken place plaintiffs wrote to Tierney asking him whether he knew of anyone who might be interested in investing in a West Virginia radio station. Similar letters to others were sent out January 1, 1949; but they differed from that sent to Tierney in that they suggested that the addressee himself might be interested in such a purchase. On January 20, 1949, Kennedy wrote Cranston, indignantly protesting the form and content of Cranston's letters and demanding a list of those so contacted by Cranston. Cranston's reply on January 25, the letter here in dispute, contained the requested list and in a postscript mentioned Tierney's name and referred to an enclosed copy of the special letter sent Tierney. Kennedy answered on February 4, expressly stating that the radio station was not for sale and that Cranston was not to contact anyone representing that it was. About two weeks later, on February 17, Tierney wrote plaintiffs acknowledging their letter of December 23, 1948, expressing an interest in WCHS, and asking "complete advice" as to the details of the station's past operation and the terms of sale. These details Cranston of course did not have. He forwarded the letter to Kennedy on February 19 and so advised Tierney. Several months later Tierney purchased the station from Kennedy. When Cranston thereafter demanded and was refused the commission allegedly contracted for, this action resulted.

The greater part of the trial centered on the existence of the brokerage contract and plaintiff Cranston's letter of February 19 as performance thereof. Defendant's argument about cancellation, when it was made toward the close of the case, emphasized the January 20, rather than the February 4, letter from Kennedy to Cranston. Judge Conger, however, in his closing remarks to the jury quite properly left it to them to determine when cancellation or termination had taken place. In this connection he stated: "[P]laintiffs contend and claim that by the letter of February 19 they complied with the contract by furnishing the name of Tierney to this defendant; and the defendant claims, of course, that there never was such an agreement, but if there was such an agreement, such an agreement was cancelled by letter of January 20, which is Exhibit C, and by a letter of February 4, Exhibit D." Neither party objected to the reference to the February 4 date as a possible time of cancellation or then suggested an additional date for performance, plaintiffs' objections being directed only to the adequacy of the judge's description of the February 19 letter.

Four hours later the jury returned for additional instructions concerning the meaning of the second question presented to them for their special verdict. This question read: "Was the agreement terminated on or before February 19, 1949, to wit: as claimed by the defendant on January 20, 1949 and February 4, 1949?"

Judge Conger first answered this request with some general statements as to cancellation and performance, in the course of which he stated (without objection) that the employment, not being for a definite term, was at will and thus subject to termination by either party at any time. This, however, left the jury unsatisfied, and some time later they made it clear to him that they wondered whether they could not take the January 25 letter as performance by the plaintiffs. Judge Conger then flatly made the ruling, properly excepted to by the plaintiffs, that the letter could not be so used. When plaintiffs moved to set aside the ensuing verdict for defendant, Judge Conger justified his decision on the ground that plaintiffs' pleadings, proof, and requests to charge had been solely limited to the February 19 performance date until the jury itself suggested the other alternative.

We think that the disputed letter was properly excluded on the question of performance, for the reason that it had no probative value on the issue in suit. Had it been relevant, plaintiffs might well have been permitted to take this issue to the jury, since the letter had at all times been in the possession of the defendant, who could hardly have pleaded either surprise or prejudice from the new light being shed thereon. But as of January 25, Tierney was not to be considered even a tentative purchaser by anyone. He had been contacted not as a potential buyer, but as a source of names of other potential investors; and he had not even replied to the letter written him. Surely plaintiffs could not thus easily fulfill their contractual obligations, or they could simply have submitted to Kennedy a series of strategically selected telephone directories. And two weeks before he answered, the plaintiffs' employment had been duly terminated according to its terms as construed by the court and accepted by the parties. For not until his letter of February 17 can Tierney be fairly counted as an interested party in this sale. Plaintiffs' decision to limit their pleadings and proof to the later date was a correct appraisal of the issue they had to meet, and confirms our conclusion of the lack of materiality of the January 25 letter on the issue of performance.

Since this was the only question raised on the appeal, the judgment is affirmed.